PER CURIAM.
This case arises out of a complaint filed in the Winston County Circuit Court on June 8, 1992, by Wanda Main, alleging that United States Fidelity & Guaranty Company and Fidelity & Guaranty Insurance Underwriters, Inc. (hereinafter described collectively as “USF & G”); Bill Malphurs; and Myra McCowan had wrongfully caused the death of her son, Arnold Fehringer. The defendants moved to transfer the cause to Jefferson County, and the court granted their motion. Main subsequently petitioned this Court for a writ of mandamus directing Judge Bobby R. Aderholt, of the Winston Circuit Court, to vacate his transfer order. We deny the petition.
The contentions of the parties suggest the following facts: On March 4, 1990, Arnold Fehringer suffered a back injury in the course of his employment. USF & G, his employer’s workers’ compensation carrier, through its “senior adjuster” Bill Malphurs, assigned registered nurse Myra McCowan to supervise Fehringer’s “rehabilitation.” Malphurs and McCowan first contracted with Dr. Gaylon Rogers, an orthopedic surgeon, who surgically treated Fehringer’s injury and recommended subsequent physical therapy at HealthSouth Medical Center. Subsequently, Main alleges, Malphurs and McCow-an “contracted with HealthSouth Rehabilitation Center (HealthSouth), a hospital that is located in Birmingham, Alabama, for [Feh-ringer] to be treated at its facility as an outpatient, and for him, during the course of [the] treatment, to reside in a hotel ... in Homewood, Jefferson County, Alabama.”
During his residence at the outpatient facility, Fehringer became despondent and began to speak of suicide. Main discussed these developments with McCowan and proposed that Fehringer leave the hotel and return to his home in Winston County. McCowan, Main alleges, dissuaded her and assured her that she would take specific precautions to ensure Fehringer’s safety. Main further alleges that these precautions were never taken. On June 11, 1990, Fehringer committed suicide.
Count B of Main’s complaint subsequently filed in the Winston County Circuit Court alleged fraud, based on McCowan’s alleged failure to take the promised precautions for Fehringer’s safety. In Count C, Main alleged, among other things, that “McCowan *386 and Malphurs undertook to perform psychiatric and psychological services and that ... they were negligent ... in performing said services.” She further averred that “the services provided did not meet the standard of psychological and psychiatric services generally] available in [the] community where the treatment occurred.” In Count D, she alleged that Malphurs, McCowan, and USF & 6 “undertook to supervise [Fehringer’s] medical treatment and rehabilitation [and that] they negligently ... supervised ... and ... provided treatment ... or failed to provide treatment.”
USF & G, Malphurs, and McCowan moved to transfer the cause to Jefferson County, contending that the complaint purported to state claims of medical malpractice and insisting that, pursuant to Ala.Code 1975, § 6-5-546, the venue provision of the Alabama Medical Liability Act of 1987, Ala.Code 1975, §§ 6-5-540 to -552 (“1987 AMLA”), venue was proper only in Jefferson County. The trial court agreed with the defendants, and transferred the cause to Jefferson County. Main’s petition for a writ of mandamus challenges the trial court’s order.
Section 6-5-546, providing for venue in medical malpractice actions, provides in pertinent part:
“In any action for injury or damages or wrongful death whether in contract or in tort against a health care provider based on a breach of the standard of care, the action must be brought in the county wherein the act or omission constituting the alleged breach of the standard of care by the defendant actually occurred.”
Main contends that her action is not a medical malpractice action, that is, that it is not an “action ... against a health care provider based on a breach of the standard of care,” § 6-5-546, because, she insists, none of the defendants was a “health care provider” as that term is used in the 1987 AMLA.
Section 6-5-542 defines “health care provider” as “[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provided’ as those terms are defined in Section 6-5-481, a portion of the Alabama Medical Liability Act of 1975. Section 6-5-481 defines “other health care providers” as including “[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services.” Main contends that McCowan’s office is not among those specifically listed in § 6-54181 or § 6-5-542; therefore, she insists, an action against McCowan is not subject to the provisions of the 1987 AMLA. The respondents, however, contend that McCowan’s services for Fehringer put her within the definition of the term “other health care providers.” The resolution of this dispute turns, therefore, on whether McCowan’s contractual relationships with Dr. Rogers and HealthSouth invoked the provisions of the 1987 AMLA.
In Wilson v. American Red Cross, 600 So.2d 216 (Ala.1992), this Court addressed the interaction of a contractual relationship between the American Red Cross (“Red Cross”) and the University of Alabama in Birmingham (“UAB”) with §§ 6-5-481 and - 542. In that case, Gerald Wilson sued the Red Cross, alleging “negligence or wantonness in [its] testing, screening, and packaging ... blood units” through which, he alleged, he was infected with hepatitis B during his in-patient treatment at UAB. Wilson, 600 So.2d at 217. The trial court dismissed Wilson’s claims “to the extent” that they were controlled by the 1987 AMLA. Id. Wilson appealed, contending, among other things, “that the Red Cross [was] not within the term ‘health care provider’ as that term is defined in ... § 6-5-542 ..., and that, therefore, his negligence and wantonness claims [were] not subject to the provisions of’ the 1987 AMLA. 600 So.2d at 218.
This Court disagreed with Wilson’s contention and held “that the Red Cross [was] an ‘other health care provider’ under § 6-5-542.” 600 So.2d at 219. The Court explained:
“The record in the instant case reveals that when Wilson received the allegedly defective blood, the Red Cross was under a contract with the University of Alabama Hospital to supply blood to the hospital. The record further reveals that the activities of the Red Cross are highly technical and require supervision and participation *387 by a physician and other trained technical personnel. Based on this evidence, we conclude that the Red Cross is employed by the hospital and that the Red Cross is directly involved in the delivery of health care services.”
600 So.2d at 218 (emphasis added).
Wilson’s rationale applies with equal force in this case. Main concedes that McCowan was a registered nurse and that McCowan was treating Fehringer pursuant to contracts with both Dr. Rogers and HealthSouth. The facts here presented stop short of affirmatively demonstrating that McCowan was “employed” by Dr. Rogers or HealthSouth in the strictest sense of that term. However, this case is like Wilson in that McCowan’s contractual relationships with HealthSouth and Dr. Rogers — persons whose offices are expressly listed in § 6-5-542 — are sufficiently analogous to employment relationships to qualify her as an “other health care provider.” In other words, McCowan’s contracts with specifically listed persons supply the nexus with those persons necessary to invoke the operation of § 6-5-542.
We conclude, therefore, as did the trial judge, that Main’s action is one “against a health care provider based on a breach of the standard of care.” Section § 6-5-546. That section requires that such an action “be brought in the county wherein the act or omission constituting the alleged breach of the standard of care ... actually occurred,” in this case, Jefferson County. Therefore, Main’s petition for a writ of mandamus, which would return this cause to Winston County, is denied.
PETITION DENIED.
MADDOX, SHORES, KENNEDY, COOK and BUTTS, JJ., concur.